IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff-Respondent, ) | |
| ) | Criminal No. 16-4134 MV |
| v. ) | |
| ) | |
| QUANG HUY BUI, ) | |
| ) | |
| Defendant-Movant. ) | |

**UNITED STATES' PROFFER OF EVIDENCE**

As part of its Appeal of Detention Order, the United States proffers the following to the Court, in support of said Motion.

Since the original detention hearing, several pertinent facts have arisen, which weigh in favor of detention, due to concern for the safety of the community. Among those are:

1. **Defendant has made false statements on official documents relating to the export of ITAR-controlled goods to Vietnam.**

    a)   In 2013, Defendant filed an I-129 Petition for an L-1A Visa. (Exhibit 1). As part of the petition, Defendant swore that he reviewed the Export Administration Regulations (EAR) and the International Traffic In Arms Regulations (ITAR), and that he did not need a license to export any of the goods or technology resulting from his business dealings in the U.S. Although the United States has reason to believe that Defendant may have been in violation of both EAR and ITAR soon after arriving in the United States, that theory is not at issue here. Rather, in this case, Defendant was informed as early as February of 2016 that he would need to register with the Directorate of Defense Trade Control (DDTC) to export the ITAR-related items he was discussing with the undercover agents in this case. In March of 2016, undercover agents again reminded Defendant about the Department of State and DDTC requirements for licensing

1

and registration specifically for the rocket engines he sought to export, the Teledyne J402-400 (hereinafter J402 rocket engines), an ITAR-controlled item.[1] (Exhibit 2). Nevertheless, he proceeded with the order.

Shortly thereafter, Defendant applied for an extension of his L-1A Visa in May of 2016 (Exhibit 3). The form was the same type of I-129 Petition form he had previously filled out in 2013. It requires him to again certify that he reviewed the Export Administration Regulations (EAR) and the International Traffic In Arms Regulations (ITAR), and that he did not need a license to export any of the goods or technology resulting from his business dealings in the U.S. By the date he submitted that application, Defendant had already been advised several times that the J402s were ITAR-controlled and that he needed a license. Additionally, Defendant had previously attempted to make other orders from other U.S. companies involving ITAR-controlled items. In one example, he was informed in detail that he needed to be registered with the U.S. State Department and would also need a license to export any ITAR goods. He was even referred to a compliance expert in that company, to help him more fully understand the registration and licensing issues. (Exhibit 4). Any claim by Defendant to ignorance of the law here is simply not credible. He knows well that he needs to be registered and licensed to export any ITAR-controlled goods.

As a result, by again stating on his I-129 that he was not involved with anything requiring a license from the U.S. Department of Commerce or the U.S. Department of State, Defendant knowingly made a false statement which materially affected his legal status in the United States.

---

[1] The Teledyne J402-400 is a turbojet engine used to power the Navy's Harpoon anti-ship missile. See, http://www.navy.mil/navydata/fact_display.asp?cid=2200&tid=200&ct=2

        b)      As part of his order of the J402 rocket engines, Defendant was also required to submit an End-Use Certification for U.S. Export Compliance explaining the items' destination, and their intended use. Defendant emailed the end-user statement to the undercover agents, indicating on the form that the J402 rocket engines were for an Unmanned Aerial Vehicle or a UAV. (Exhibit 5). However, as part of the same email, Defendant provided the undercover agents with a list of requirements he wanted for a consultant to help him integrate the J402 rocket engines into a missile. That document, titled "J402 engine adaptation on object training requirement" lists among the requirements that the "trainer is an expert in small gas turbine engines field for UAV, missiles . . . trainer should hold the experience of J402 engine, adaptation the engine to type of Harpoon missile." (Exhibit. 6). At a trial on this matter, the United States will provide witness testimony from undercover officers that Defendant stated several times that the J402 rocket engines he wished to purchase were for a missile.

### 2. Evidence Suggests Defendant Is An Employee of the Vietnamese Army

After the original detention hearing, agents executed search warrants on Defendant's home and computers. One of the documents found in that search indicates that Defendant is an NDE, or national defense employee of Vietnam. (Exhibit 7b) The document also states that his employment is pursuant to a "military Mission – national defense 2016" and also part of a plan to "provide the manpower to the economic bloc, national defense factory production and repair for 2016." (Exhibit 7a) As such Defendant may be an unregistered foreign agent, who would be legally required to register under 22 U.S.C. § 611. Moreover, if his work is in the "national defense production" for The People's Army of Vietnam, and he is charged in this case with attempting to export an anti-ship missile, there is good reason to keep him incarcerated until trial. The fact that he is employed by a telecommunications company, yet is attempting to procure an

anti-ship missile (as opposed to chips or sensors or other ostensible telecommunications devices) only causes the United States *further* concern regarding Defendant's apparent lack of forthrightness in statements he has made to the United States government regarding his true reasons for being here.

### 3. Defendant Continues to Attempt to Procure ITAR Materials

Defendant has been reminded countless times of the need to both register with the Directorate of Defense Trade Controls and also obtain a license before he may engage in the business of exporting ITAR-controlled items.  Yet he has done neither.  There is no record of him ever even contacting the DDTC.  Yet in December of 2016 – after he had been indicted in the instant case, he was still negotiating for the purchase of ITAR-controlled materials from a company called Aerotech. In that recent instance, Defendant did ask about completing the sale legally.  (Exhibit 8).  But he made similar statements in the case in which he is currently charged, and then flatly ignored and avoided the legal means for completing the sale, despite the undercover agents telling him it was unlawful, and offering to wait for him to become registered and licensed so that it would then be legal.  In the Areotech negotiations, Defendant stresses that he wants Aerotech to handle licensure and registration, which is exactly what he did in the case before this Court.  Defendant ignores his own obligation to <u>himself</u> be registered and licensed.  There is clearly a significant risk that if he is permitted to remain out of custody, Defendant will continue such procurement attempts, some of which may not be discovered and prevented by the proper authorities.

It appears that the present indictment has not deterred Defendant from plowing ahead and attempting to export ITAR-controlled goods.  Additionally, because of his prolific procurement

activity, agents in this case suspect Defendant has engaged in other attempts to procure and export ITAR-controlled goods, of which they are currently unaware.

## CONCLUSION

Defendant's danger to the community stems largely from a propensity for attempting to conceal or obscure his activities and purpose in the United States. He made a false statement on his I-129, and his end-use statement regarding the order of the J402 rocket engines. He is employed by the People's Republic of Vietnam, yet has not notified the United States of this fact. His activities indicate his presence in the United States presents a substantial and ongoing risk that he will continue to attempt to procure weapons, unlawfully if necessary, and that even a present indictment cannot deter him. The risk of harm to the United States is too great to permit him to remain free pending trial.

Respectfully submitted,

JAMES D. TIERNEY
Acting United States Attorney

 /s/ *Electronically Filed*
JON K. STANFORD
Assistant United States Attorney
P.O. Box 607
Albuquerque, NM 87103
(505) 346-7274