```
 1                 IN THE UNITED STATES DISTRICT COURT

 2                   FOR THE DISTRICT OF NEW MEXICO

 3   _____
                                     )
 4   UNITED STATES OF AMERICA,       )     No. 1:16-CR-04134-MV-1
             Plaintiff,              )
 5                                   )
          vs.                        )     Aspen Courtroom
 6                                   )     Santa Fe, New Mexico
     QUANG HUY BUI,                  )
 7           Defendant.              )     September 19, 2017
     _____)     9:40 a.m.
 8

 9              CORRECTED TRANSCRIPT OF PROCEEDINGS
                            SENTENCING
10            BEFORE THE HONORABLE MARTHA A. VAZQUEZ
                UNITED STATES DISTRICT COURT JUDGE
11
     APPEARANCES:
12
     For the Plaintiff:   JON K. STANFORD, ESQ.
13                        UNITED STATES ATTORNEY'S OFFICE
                          District of New Mexico
14                        P.O. Box 607
                          Albuquerque, New Mexico  87103
15
     For the Defendant:   JOHN C. ANDERSON, ESQ.
16                        HOLLAND & HARD, LLP
                          P.O. Box 2208
17                        Santa Fe, New Mexico  87504

18                        LU PHAM, ESQ.
                          Dowell Pham Harrison, LLP
19                        505 Pecan Street, Suite 101
                          Fort Worth, Texas  76102
20
     Also Present:        Ann Spiratos, Interpreter
21                        Beatrice Manzanares, Probation Officer

22
     REPORTED BY:         CARMELA V. McALISTER, CRR, RPR, NM CCR 308
23                        United States Court Reporter
                          106 S. Federal Place
24                        Santa Fe, New Mexico  87501
                          Phone:  505-992-3829
25                        Email:  Carmela_McAlister@nmd.uscourts.gov
```

1        Proceedings recorded by mechanical stenography; transcript
2   produced by computer.

3

4                                    **INDEX**

5   Court on the Record                                    3

6   Argument by Mr. Anderson                               4

7   Defendant's Allocution                                12

8   Statement by Ms. Pham                                 15

9   Response by Mr. Stanford                              18

10  Reply by Mr. Anderson                                 24

11  Court Imposes Sentence                                25

12  Certificate of Official Court Reporter               37

13

14

15

16

17

18

19

20

21

22

23

24

25

1            THE COURT:  If I may please have appearances in the

2    matter of United States v. Bui.

3            MR. STANFORD:  Good morning, Your Honor.  Jon Stanford

4    for the Government.

5            THE COURT:  Good morning, Mr. Stanford.

6        And we won't get started until the interpreter comes.  I just

7    want appearances, please.

8            MR. ANDERSON:  Good morning, Your Honor.  John Anderson

9    and Lu Pham on behalf of the Defendant.

10           THE COURT:   Thank you.

11       Oh, it's your client that's not here.  Oh, he is?  If he

12   could please come forward.

13       Good morning, Mr. Bui.

14           THE DEFENDANT:  Your Honor, thank you.

15           THE INTERPRETER:  Good morning, Your Honor.

16           THE COURT:  Good morning.  We're ready to proceed.

17       Mr. Bui, you're here for sentencing this morning.  I'd like

18   to ask you if you have read and had translated the Presentence

19   Report that's been prepared in this case?

20           THE DEFENDANT:  Your Honor, yes, I did.

21           THE COURT:  Okay.  There was also a Sentencing

22   Memorandum that was prepared on your behalf.  Have you had that

23   also translated, and have you discussed that with your attorney?

24           THE DEFENDANT:  Your Honor, I have read and also based

25   on my attorney's instruction.

```
 1              THE COURT:  Okay.  And the Government prepared a
 2    response to that document.  Did you review that as well with your
 3    attorney?
 4              THE DEFENDANT:  Your Honor, yes, I have read those.
 5              THE COURT:  Let's see, I believe that was everything
 6    that was filed in this case, is that correct, Mr. Anderson, on
 7    behalf of your client?
 8              MR. ANDERSON:  That is, Your Honor.  That's correct.
 9              THE COURT:  Mr. Bui, you have the right to speak.  I'm
10    happy to hear from you.  Mr. Anderson also has the right to speak
11    on your behalf.
12         You may proceed, Mr. Anderson.
13              MR. ANDERSON:  Thank you, and good morning, Your Honor.
14         I would like to begin by introducing the Court to folks that
15    are in the gallery here.  Mr. Bui's wife, Thuy Pham is on the
16    Court's right.
17              THE COURT:  Good morning.  Thank you for being here.
18              MR. ANDERSON:  And, Your Honor, if it acceptable to the
19    Court, Ms. Pham would like to address the Court on matters of
20    sentencing, if that's permissible, at the conclusion of Mr. Bui's
21    presentation.
22              THE COURT:  Of course.
23              MR. ANDERSON:  Your Honor, we are here this morning on a
24    Rule 11(c)(1)(C) plea agreement.  Mr. Bui has pled guilty to a
25    violation of 18 U.S.C. Section 554.  And the (c)(1)(c) plea
```

USA v. Quang Huy Bui
1:16-CR-04134-MV-1
September 19, 2017

1    agreement calls for a term of imprisonment of between 12 months
2    and one day, and 24 months.
3        And we are asking the Court to accept that (c)(1)(C) plea
4    agreement and impose a sentence of 12 months and one day.  And we
5    submit that that term of imprisonment would be sufficient but not
6    greater than necessary to comply with the purposes of punishment.
7        I'd like to begin by giving the Court a picture of Mr. Bui to
8    supplement what is contained in the Presentence Report.  Mr. Bui
9    is a Vietnamese national.  He grew up in Vietnam under what I
10   would only describe as very modest circumstances.  And through his
11   efforts, he obtained a coveted job with a large telecommunications
12   company in Vietnam called Viettel Group.  Those jobs in a
13   developing country like Vietnam are rare, and his achievement of
14   that position with Viettel represents a substantial success.
15       Beyond simply getting a job at Viettel, he then achieved
16   further success at Viettel by being assigned to a series of
17   overseas postings.  And those culminated in late 2012 when he
18   received a posting in the United States.  I think that's more than
19   really, when you look at his background, he could ever have hoped
20   to achieve.  Mr. Bui, with his wife and child, moved to the United
21   States, and that represented really the pinnacle of success for
22   him.
23       After he was posted to the United States and where we get
24   into the events that bring us here today, Mr. Bui began to
25   receive, from colleagues in Vietnam, requests to procure certain

1   items.  And what is driving, I think, the events that bring us

2   here today is Mr. Bui's desire to fulfill those requests quickly

3   and efficiently and without delay.  And I think what you will hear

4   from Mr. Bui is that doing that quickly and without delay, his

5   belief is that that would put him in good stead with the company

6   in Vietnam and ultimately lead to a permanent posting in the

7   United States.  And that is what he wanted, not only for himself

8   but for his wife and his young son, was all the benefits that come

9   with living in the United States.

10       Mr. Bui -- and this is something that we raised in our

11   Sentencing Memorandum -- did not receive training from Viettel.

12   And I want to be clear on why I raise that.  And the Government's

13   sentencing memo seems to suggest that we raised that to dispel any

14   suggestion that Mr. Bui acted knowingly.  That's not the case.

15   And I want to be clear that the reason we raised the lack of

16   training is because Mr. Bui was really not trained in what I'll

17   call a culture of compliance.

18       In many U.S. businesses -- I would suggest most U.S.

19   businesses, compliance is important.  When employees have a

20   question, they are encouraged, if not directed to, talk to the

21   general counsel, talk to the lawyers.  That's not the culture in

22   Vietnam.  The culture in Vietnam is much more of do what you're

23   instructed to do.  And that is, I believe, where the lack of

24   training comes in.  Not to suggest that Mr. Bui did not act in an

25   unlawful manner.

1       Be that as it may, Mr. Bui made efforts to obtain the items
2   that he was asked to obtain from Vietnam.  But he's not someone, I
3   would suggest, who did so with at least a pre-existing intention
4   of acting unlawfully.  I think the material in the PSR indicates
5   that in many instances, Mr. Bui made at least an initial attempt
6   to comply with the law.  And I think where he ran into problems is
7   that that compliance would have been -- would have caused delay.
8   It would have been, in some cases, expensive, and the outcome
9   might have been uncertain.
10      And I say all this to impress upon the Court that Mr. Bui
11  caved to these pressures.  He has admitted unlawful activity, but
12  he is not someone who came to the U.S. for the express purpose of
13  violating U.S. export control laws.  It's a situation where he
14  succumbed to the temptation and pressure and cut corners in order
15  to please people in Vietnam for the ultimate goal of ensuring a
16  permanent posting for him in the United States.  And he has now,
17  standing before this Court, realized that that vision is not to be
18  inept and he can see the consequences of that.
19      Nonetheless, Your Honor, there are a few points here that I
20  would like to raise that I believe mitigate the severity of this
21  offense and do call for a sentence at the low end of this
22  stipulated guideline range.
23      The first is that we do believe this transaction is a
24  licensable transaction, and I know the Government takes issue with
25  that.  What I mean when I say that is that it is a transaction for

1    which the State Department -- and when I talk about the

2    transaction, I'm speaking about the J402 engine that was the

3    subject of the Indictment in this case.  That transaction, we

4    believe, would have been licensable.  There was no prohibition in

5    the Arms Export Control Act or its implementing regulations that

6    would have categorically prohibited the export of this item to

7    Vietnam.

8         And I know that the Government says that we're engaging in

9    speculation as to whether a license would have been granted, but I

10   would stand by the argument that we have in our Sentencing

11   Memorandum.  We've pointed out the fact that this is not like an

12   export to a prohibited country, such as China, Iran, or North

13   Korea.  This is a transaction to, essentially, an ally that, even

14   during the time of the offense, Your Honor, was not prohibited

15   under the -- what we call the International Traffic and Arms

16   Regulations.

17        And we have pointed out that the vast, vast majority of

18   license applications submitted to DDTC are granted, and I

19   understand the Government suggests that that's speculation.  But

20   the Government has not offered, for example, any correspondence

21   from the State Department that says it wouldn't be granted.  So I

22   would stand by the facts that we've put forward to suggest that

23   had a license been applied for here, in all likelihood, it would

24   have been granted.

25        So this is not a transaction that would have been prohibited

1   or Mr. Bui's attempt to effectuate an export that would have been

2   prohibited.  It's his failure to go through the proper processes

3   to make sure that that license was properly applied for and

4   obtained.

5       We would also suggest that the transaction here -- and it's

6   no secret that Viettel Group is ultimately controlled by the

7   Vietnamese Ministry of Defense.  Vietnam remains a communist

8   country where most, if not all, businesses of any substantial size

9   are controlled by the Government.  And the fact that this item was

10  going to the Government of Vietnam, we suggest, presents a very

11  low risk of diversion to rogue actors.

12      We'd also raise in our Sentencing Memorandum, Your Honor, the

13  idea that after this arrest, and after these events unfolded,

14  Mr. Bui participated in a number of interviews and gave

15  substantial cooperation to the company in its own disclosure

16  efforts.  And the Court may be aware that in connection with this,

17  it not only resulted in a criminal proceeding against Mr. Bui, but

18  it resulted in the company submitting very fulsome and voluntary

19  disclosures to the Departments of State and Commerce.  And those

20  disclosures detail instances of potential noncompliance that go

21  far beyond anything that's -- Mr. Bui has been charged with or

22  even anything that's in the PSR.  And Mr. Bui provided substantial

23  assistance to the company in formulating those disclosures.  And I

24  would submit that that shows already on Mr. Bui's part a respect

25  for the law.

1      And I understand the Government disagrees, and the Government

2  says, well, his cooperation only began after the arrest in this

3  case.  And my reaction to that is that seems to be the case in

4  most cases.  It is a rare case where cooperation begins before law

5  enforcement's involvement.  And, yet, we often see defendants

6  coming in who cooperated after an arrest and the Government

7  seeking a lower sentence on that basis.

8      So we continue to submit that Mr. Bui's cooperation in that

9  investigation, which ultimately culminated in the submission of

10  these reports to the Department of State and Commerce, is worthy

11  of consideration by this Court under Section 3553(a).

12      The last point I would like to mention, Your Honor, is we had

13  in our Sentencing Memorandum a discussion of what we believe is a

14  similar case that came before this Court about two and a half

15  years ago in the Cai case.  The Cai case involved two Chinese

16  nationals who pled guilty and were sentenced for conspiring to

17  violate the Arms Export Control Act.

18      And we have cited the Cai case because it is my understanding

19  that both of those individuals received sentences of 18 months.

20  And we've tried to analogize the Cai case and suggest that that

21  conduct was actually more egregious than Mr. Bui's because that

22  was an export to a prohibited country.  It was done by individuals

23  who were apparently out for monetary gain, not doing it at the

24  request of an employer.

25      And I did -- I will say, I did find the Government's response

1    to that -- I take issue with it on a couple of levels.  And the

2    first of those, Your Honor, is that the Government seems to reject

3    any effort to compare this case to any other case.  The Government

4    says other cases, including Cai and others that they outline in

5    their Sentencing Memorandum, don't serve as useful touchstones.

6    Instead, we should just look at the Guidelines.

7         And, to me, that's problematic.  Because if you are trying to

8    avoid unwarranted disparities between offenders convicted of

9    similar offenses, the best litmus test for that is what those

10   other defendants actually received.  The Guidelines remain

11   theoretical.  And if you look at the Guidelines, that doesn't

12   reference what those other defendants actually received.  So I do

13   disagree with the Government's assertion that we can't look to

14   other cases.  That's what we, as lawyers, do.  We look at other

15   cases, see how those cases came out, and analogize our case to

16   those.  The Guidelines only work if other defendants are actually

17   getting those guideline sentences.  And we don't know that that's

18   the case.

19        So I would submit to the Court that it is entirely

20   appropriate to look at other export control cases, including ones

21   that came before this Court, and look at the sentence imposed in

22   those cases, and analogize those cases to arrive at an appropriate

23   sentence in this case.

24        Now, beyond that, in the Cai case, the Government seems to

25   suggest that there are different facts in the Cai case.  And

1   there's not much detail there.  But, again, we would submit that

2   the Cai case is an appropriate reference point for this Court to

3   use when determining an appropriate sentence.

4       And we do believe that the 18-month sentence imposed in the

5   Cai case calls for a lower sentence in this case.  Again, that was

6   an export to a prohibited country.  It would not, under any

7   circumstances -- could not have been approved for export.  And

8   those were independent actors.  There's a real risk of diversion.

9   Mr. Bui was an employee.  And, again, that is not to dispel his

10  acceptance of responsibility for his unlawful conduct, but it is

11  to suggest there's a much lower risk of diversion of those items

12  than was at issue in the Cai case.

13      I would conclude, Your Honor, by again asking the Court to

14  accept the Rule (c)(1)(C) plea agreement in this case and to

15  impose a sentence of 12 months and one day imprisonment.  I'm

16  happy to answer any questions the Court may have.  If the Court

17  does not have any questions, I would defer to Mr. Bui for his

18  presentation.

19          THE COURT:  Thank you very much, Mr. Anderson.

20      Mr. Bui, I'm happy to hear from you.

21          THE DEFENDANT:  (In English.)  Your Honor, previously I

22  learned a few years in English in Vietnam, and I can speak

23  English.  However, I think that my accent is not good enough, so

24  that I would like to use Vietnamese interpreter here before the

25  Court, so that --

1          THE COURT:  I can understand you fine.

2          MR. ANDERSON:  Your Honor, just because of the nature of

3    the situation, I would ask that the Court allow Mr. Bui to use the

4    interpreter.  I believe he's more comfortable in that respect.

5          THE COURT:  Okay.

6          THE DEFENDANT:  (Through Interpreter.)  I completely

7    admitted my responsibility regarding to whatever happened,

8    regarding to not follow the laws.

9          I accept all the consequences based on whatever that

10   happened, with the purpose that I have learned -- I have learned a

11   good experience of my own personal life.  I am certain that this

12   mistake would never be repeated.

13         In front of the Court, I apologize to the Court regarding to

14   what happened.  I also apologize to my wife, my child, my friends.

15   They have been closely -- stayed by me during my difficult time.

16   Although my actions have stemmed from my desire, my family desire,

17   to work in the United States, and my child would have a better

18   environment and more opportunities in the future, better than what

19   we have had in Vietnam.

20         To be able to do that, I would try to work very hard.  I

21   would try and I am trying to do everything that I have not done in

22   the past.

23         Your Honor, you also know that I had learned only languages.

24   I had no experience, a solid experience, about buying, selling,

25   especially regarding to the new technologies.  That was the reason

1   that during the time that I was working, I had made mistakes, that
2   I did not follow the rules accordingly.  I had tried to take a
3   shortcut, to complete my task short, fast and less expense --
4   least expensive.
5       In reality, no.  I admit it.  I realize that everything I had
6   done actually caused and brought me to worse condition.  I have
7   lost everything in my life.  My work.  And, actually, it affect
8   tremendously to my family.
9       I acknowledge that, that when I worked in the United States
10  as an individual, I am responsible for my action, and then -- and
11  that I have learned in United States to obey the law is the most
12  important, and it would bring better result for me than many
13  finance -- than anything else.  It would not bring any bad result
14  like this to me and my family.
15      When I go back to Vietnam, I have to start all from the
16  beginning.  It will be very difficult -- actually difficult for me
17  to start all over again, including my life, my work.  But I hope
18  that with the mistake that I have learned will be a good lesson
19  for me, a big lesson for me.  It could be -- it could bring
20  result, value, to support, to teach me and for me to train other
21  employees to avoid making mistake with the laws when we are doing
22  business in the United States, a developed country.
23      I know that I have to stay away -- I have to be far away from
24  my family.  I cannot live with my wife for a period of time.  All
25  their burdens would weight on my wife's tiny shoulders, regarding

1   to take care of my children, my parents, and that she has to find

2   a job to support the whole family.  My child with having lack of

3   dad's love.  My wife, she has to -- she has to answer a lot of

4   difficult questions from my child and my friends regarding to the

5   absence of his dad.

6        I know that the Court's duty is to execute the law, justice.

7   However, I hope that the Court would consider the effect of me --

8   to me and my wife, my family.  Please give me a chance to correct

9   my mistakes, to become a good dad, and that would be becoming a

10  mature individual.  Yes.

11       Thank you, Court, for your time and for listening to me.

12            THE COURT:  You're welcome, Mr. Bui.  Thank you very

13  much for your comments.

14       I'm happy to hear from your wife now.

15       Good morning, Mrs. Pham.

16            MS. PHAM:  (Through Interpreter.)  Good morning, Your

17  Honor.  May I introduce myself?  I am Thuy Pham.  I am Huy Bui's

18  wife.  We have been married over ten years, and we have one son,

19  seven-year-old.

20       Before I came to the United States, I work at a bank, MHB,

21  MHB in Hanoi.  We arrived in the United States in January 2014.

22  Since we are here, I have been a homemaker.  I help my child, and

23  I volunteer to work at a school, Pearl Zanker, Pearl Zanker.

24       We are having a very beautiful life over here.  The

25  environment is very good, especially the school, excellent school.

The teachers and everyone else support me and my son tremendously. People over here are very friendly.  This is the first time we live in a country, a developed country, where people come from different countries, different cultures, and everyone works so hard.  The children study hard to have the same dream, to have a better life, better future.

I am thankful to United States.  I am thankful for all the chances and opportunities.  I am grateful to my friends, my American friends.  They're very friendly and very supportive.

With that, I don't know what else I can do but to volunteer all of my time that I am here and at the school of my son.

I did not get involved with my husband's employment or business.  I don't know any details about it.  With that, the reason -- that was the reason I was so shocked when Mr. Huy was arrested and that he violated United States laws.

In the future, our family will be separated, and I have to go back to Vietnam.  My son and myself would go to Vietnam in the next few days.  Our life will be changed completely.  Especially the one who suffered a loss would be my son.  He is only seven years old.  He is at a stage where he's mental, physical developing.

At this time in his life, he needed his dad and his mom near him.  Mr. Huy is a very good father.  He is just like my son's best friend.  Even though he was busy, he spent every day of his time with his son.  The father and his son used to go to the park,

1    playing sports, swimming, other activities that, as a mom, myself,

2    I cannot replace that.

3         In the future, when my son goes back to Vietnam, he has to

4    get to know the brand-new environment, new friends, and relearn

5    the language.  Because when she -- when he first got here, he was

6    only three.

7         I also don't know what to do to explain to him about his

8    dad's absence.  The difference between the time in the United

9    States and in Vietnam, the time would be difficult for him to

10   speak with his dad, to contact, to communicate with the dad,

11   because the time difference.  In the United States, it would be

12   the daytime; in Vietnam, it would be the nighttime.

13        I'm pretty sure the son would have a difficult time.  I told

14   my son about us going back to Vietnam.  He kept asking me why we

15   had to go back.  He has all of his friends here.

16        For myself, when I go back to Vietnam, I have to start all

17   over again.  I have to look for a new job.  In Vietnam, at my age,

18   it's very difficult to find a job.  I have no other choice.  And I

19   will have to take care of my child and having the burden of

20   finding job.  I have no income.

21        I know that the Court must apply justice, but I truly hope

22   that the Court will understand our situation, my family.  I would

23   like to thank the Court.

24        THE COURT:  Thank you very much, Ms. Pham.

25        Mr. Anderson, if you and Mr. Bui wouldn't mind having a seat,

1    so that I can hear now from Mr. Stanford.

2         Mr. Stanford?

3              MR. STANFORD:  Thank you, Your Honor.  Would you like me

4    at the podium?

5              THE COURT:  Please.

6              MR. STANFORD:  Your Honor, I know very well that this

7    Court has carefully and determinedly read all of the relevant

8    documents and briefings in this case, especially the Sentencing

9    Memorandum.  As a result, I'm not going to take up more of your

10   time to rehash points made in those documents and memoranda,

11   although there are two issues that counsel mentioned that bear

12   some discussion here.

13        First of all, the licensability issue.  Here's why that's a

14   non-starter.  At the time this transaction was consummated with

15   payment, there was an arms embargo against Vietnam.  I think it's

16   pretty hard to argue with a straight face that this license would

17   have been granted when there was an arms embargo against the

18   country to which it was being intended for export.  I think that's

19   the end of that argument.

20        However, related to that statement was something about, you

21   know, an alliance between Vietnam and the United States.  And I

22   don't think we have arms embargoes against any of our allies.  So

23   I think, once again, the ally argument is a non-starter.  Perhaps

24   in the future that will occur, but at the time that this

25   transaction occurred, where wire transfers were made to pay for

the items that Mr. Bui ordered, there was an arms embargo.  And I
think it -- I'm going to once again use the word "specious" to
describe the argument that this license would have been granted
for, reasonably, the embargo alone.

However, the other one is that Mr. Bui did, in fact, apply
for other licenses that are mentioned in the PSR and in my
Sentencing Memoranda, and every one of them which was related to
ITAR goods was denied.

Everything he was shopping for was part of a missile
component system, Your Honor.  There was a Gimbal tracker, the
tracker boards, the video system, and then the turbojet engine to
deliver the missile.  These are all weapons -- parts of a weapon.
And everything else that he had applied for that would have been
with ITAR was denied.  So I don't think we can talk too much about
whether or not this would have been a licensable commodity.  It
simply wasn't.

And then just to touch briefly on the Cai case.  You know,
we're not saying that courts shouldn't compare cases when
fashioning a sentence.  We're saying more that such comparisons
should only take place after considering the 3553(a) factors, and,
in that instance, comparing cases that are -- that have more in
common with one another.

And, you know, Cai, you have really kind of a couple of kids.
And, here, you have a high-level executive.  They were seeking
electronic components.  He was seeking a turbojet engine to

1   deliver a missile that destroys a ship.  We can go down the list.

2   It's in my memorandum.  But they're very different.

3        And if we're going to compare those, we need to look at some

4   of these other ones.  The ones mentioned in our brief, they're

5   more closely related, quite frankly.  They are, in fact, cases

6   that resulted from indictments for smuggling, not IEEPA, like the

7   Cai case.  They are cases which -- I think all but one of them

8   involved much less nefarious items than the case here.  And, yet,

9   they were given even higher sentences than the one that we are to

10  consider here today.  So that is the spirit in which we make that

11  argument.

12       Now, Your Honor, we entered an agreement stipulating to a

13  range of 12 to 24 months.  And where the Defendant's sentence

14  falls, I think, should be determined by the Court's appraisal of

15  the Defendant's intentions.

16       If the Court accepts that the Defendant's repeated attempts

17  to acquire weapons components were a series of innocent mistakes

18  which kept repeating themselves, despite Defendant being advised

19  numerous times that these transactions were against the law, well,

20  then, that may put downward pressure on choosing which end of the

21  sentencing range in the agreement is appropriate.

22       If, however, the Court believes that because of Defendant's

23  education, his experience, his being a senior executive in not one

24  but two companies owned by the Vietnamese Ministry of Defense,

25  combined with the multiple meetings that he had with U.S.

1    companies selling these defense articles, where -- you know, where

2    they told him, This is against the law, well, if the Court

3    believes that because all that Defendant can't reasonably claim

4    that he was unaware that this transaction was against the law or

5    didn't appreciate the consequences, well, then, we believe that

6    the top of the agreed-upon range is most appropriate.

7         You know, regardless of cultural differences, Your Honor,

8    everyone knows it's wrong to lie.  And I think that that issue

9    alone is probably the ultimate guiding factor in this case.  But

10   if those facts don't persuade the Court that his claim of an

11   innocent mistake simply cannot be true, we would submit that there

12   is one particular item which is proof positive that he

13   demonstrated that he was well aware of the illegal nature of his

14   conduct and nonetheless acted willfully to deliberately violate

15   U.S. law.

16        Your Honor, in one of our attachments, we supplied the

17   end-user statement in which Mr. Bui lists the intended use for the

18   J402 turbojet engine as an unmanned aerial vehicle.  Now, that end

19   user statement was sent to Sandia Tech, the company who provided

20   the engine, so that Sandia Tech could send that on to demonstrate

21   that they were in compliance with the law.  That was intended for

22   someone else's eyes.

23        What was intended for Sandia Tech's eyes only, because they

24   were in on the deal for the illegal transaction, was the document

25   attached to that same e-mail, where he clearly says, this is for a

harpoon missile.  Make sure you've got somebody that can help me configure it.

And, you know, that J402 is only for a missile system.  As we've supplied some documentation showing that the particular model, the 400 series model, that's only for a harpoon or what's called a land-attack missile.  These are just for missiles. There's no way that you can, with a straight face, say, oh, this was for a drone.

And while we're talking about the drone, let's be clear that even the drone that the other models of turbojet engines, the J402, even those drones, they're not the kind of drones that Amazon uses to deliver toilet paper to your house if you live in Seattle.  These are targeting drones used in missile testing.  So calling it an unmanned aerial vehicle just doesn't pass the straight-face test.

And then when he attached that other document, saying, you know, for your eyes only, this is a harpoon component, what that is, Your Honor, is a demonstration that he knew what he was doing was wrong and he was trying to hide it.  There's only one reason that you try to hide something that you know is wrong, is because you know it's illegal and you don't want to get caught.

He deliberately violated U.S. law to export a component of a missile system and has continually tried to hide this fact.  The agreement has already benefited Mr. Bui greatly.  It's taken his guideline range way, way down.  Because of his intentions, as

1    demonstrated by his actions, we believe that the top of that

2    range, 24 months, is the only appropriate sentence.

3         And to be clear, we deeply regret the impact this is going to

4    have on his family, on his wife and child.  But his actions, Your

5    Honor, his repeated actions, despite knowing that this was against

6    the law, put us in territory where we don't have any other choice

7    but to sentence him at the top of the Guidelines.

8         That's all I have, Your Honor, if there are no questions.

9              THE COURT:  Mr. Stanford, I guess there's a nagging

10   question that I have.  In order to appreciate the security issues

11   which you raised in your brief and you raise now, it's difficult

12   to gauge that when the Government agrees to this kind of a plea

13   agreement.

14        I know that there's disagreement with regard to this issue,

15   but when it's the Government's contention that what's involved

16   here are missile component systems, it's -- then why is the

17   Government agreeing to a range of 12 months and a day, to 24

18   months?

19             MR. STANFORD:  Well, Your Honor, there are many things

20   that go into the resolution of a case that I'm simply not able to

21   discuss in open court.  We must balance the interests of what kind

22   of things might be discussed in a trial that we don't want

23   discussed, quite frankly.  Methods of detection of these types of

24   crimes are pretty closely-held secrets in the United States.  And

25   we have to balance the end results of this case with what impact

1    this might have on a hundred other cases down the road.

2         And as you know, Your Honor, this plea had to be approved by

3    Washington, D.C., and we had numerous conversations with our

4    counterparts out there balancing what we consider to be the

5    interests of justice with the interests of protecting our methods

6    for preventing this type of crime in future cases.

7              THE COURT:  Thank you, Mr. Stanford.

8              MR. STANFORD:  Thank you, Your Honor.

9              THE COURT:  Mr. Anderson?

10             MR. ANDERSON:  Your Honor, if I may speak to a couple of

11   the issues that Mr. Stanford raised which are valid.

12        The first is, with respect to the embargo on Vietnam, and I

13   think that Mr. Stanford and I can ultimately agree on what the law

14   was at the time.  Vietnam, at that time, was a prohibited country.

15   That is, it was listed under 22 C.F.R. Section 126.1, which

16   generally prohibits the export of military items to those

17   countries.

18        Interestingly, though, in 126.1(L), at the time, Vietnam had

19   an exception, so licenses could be approved for matters relating

20   to maritime domain awareness, essentially meaning the -- as I

21   understand it -- the sea or the ocean around Vietnam and ensuring

22   the safety of that area.  And I -- my understanding is that that

23   stems from activities that are going on in the South China Sea and

24   relating to China and those types of political questions.

25        But there was an exception, even at the time of -- set forth

1    in the Indictment, there was an exception for maritime domain

2    awareness.  And it's the Government's contention that this is for

3    a harpoon missile.  Our belief is it would fall into that

4    exception, and that is what would allow DDTC to grant that

5    license.

6        So that, I think, may be the disconnect that we're talking

7    about here when Mr. Stanford is saying there's an embargo, and

8    we're saying that it's a licensable transaction.

9        And it may also -- I think, bears on the question that the

10   Court is asking, which is:  What is the security implications of

11   the technology at issue here?  And our suggestion is that the

12   licensability of that transaction speaks to the idea that it would

13   not -- the export of this technology would not present the type of

14   material risk to national security that the Government suggests.

15       The second piece of this, Your Honor, is that the -- Mr. Bui,

16   again, is not denying that he acted knowingly and unlawfully.  I

17   know the Government is reiterating that, but he has accepted

18   responsibility for his conduct.  So, you know, the question as to

19   whether he is acknowledging that, he is not here contending to the

20   Court that this conduct was the result of simply his ignorance of

21   the law.  He's admitted to engaging in that type of unlawful

22   conduct.

23       That's all I have, Your Honor.  Thank you.

24           THE COURT:  Thank you.  If you could please approach,

25   then, the podium with Mr. Bui.

1        Mr. Bui's before the Court for sentencing in case number

2    16-CR-4134.   Pursuant to Booker, this Court must consider the

3    advisory Sentencing Guidelines, as well as each of the additional

4    factors stated in 18 U.S.C. 3553(a), in imposing a reasonable

5    sentence that is sufficient but not greater than necessary to

6    comply with the purposes set forth in Section 3553(a).

7        The Court adopts the Presentence Report's factual findings,

8    has considered the Sentencing Guideline applications and the

9    factors set forth in 18 U.S.C. 3553(a)(1)-(7).

10       Mr. Bui pled guilty to Count II of an Indictment charging him

11   with smuggling goods from the United States in violation of 18

12   U.S.C. Section 554.

13       The offense level is 23.   The criminal history category is I,

14   establishing a guideline range of 46 to 57 months.   However,

15   Mr. Bui has entered into a plea agreement pursuant to Rule

16   11(c)(1)(C) that stipulates to a sentencing range of between 12

17   and 24 months, as well as a three-year term of supervised release.

18       The Court accepts this plea agreement.   It's satisfied that

19   the agreement is sufficient but not greater than necessary to

20   comply with the purposes set forth in Section 3553(a).

21       With respect to the nature and circumstances of the offense,

22   this offense involved the procurement and attempted exportation of

23   goods regulated by federal arms regulations.   Specifically,

24   Mr. Bui, working for the United States affiliate of a state-owned

25   Vietnamese telecom company, purchased and attempted to export jet

1    engines used for anti-ship cruise missiles.  Mr. Bui was aware of

2    the requirement for a permit to export these items, but did not

3    obtain the required permit.  Additionally, he was aware of their

4    intended use but attempted to mislead the manufacturer about the

5    intended use.

6        In support of his argument for a sentence at the low end of

7    the stipulated range, Mr. Bui asserts that he had applied for a

8    permit but it would likely have been -- that it -- and that it

9    would likely have been approved.  Mr. Bui argues that this

10   mitigates any harm to the United States security or foreign

11   policy.  As the Government notes in its response, however, this

12   argument is speculative and there is no evidence to support the

13   claim that a permit would have been granted.

14       Mr. Bui also asserts that a low-end sentence is appropriate

15   because he worked at the direction of others at Viettel.  Mr. Bui

16   claims that he did not engage in this conduct on his own

17   initiative.  At the same time, Mr. Bui asserts that he engaged in

18   this conduct out of his desire to impress his superiors in

19   Vietnam, by delivering the goods that they requested quickly.

20   Whether or not he was working under the direction of others or

21   simply cutting corners to impress his superiors, the record is

22   clear that he understood that his actions were unlawful.

23   Additionally, Mr. Bui was not a mere employee.  He was a

24   high-level executive running the United States affiliate of

25   Viettel.

         With respect to the history and characteristics of the
Defendant, Mr. Bui is 36 years old.  He was born in Nam Dinh,
Vietnam and lived there until college.  He and his family lived in
a community center/temple, and his father was the keeper of the
temple, which required him to greet people entering and maintain
the premises.  Mr. Bui has no siblings, and he grew up in a very
poor environment.

         His mother worked in a garment factory in Vietnam for some
time, but she eventually moved to Russia to work in a different
garment factory to help support her family, and to send Mr. Bui to
college.  She remained there for a period of ten years, living
away from her husband and away from her son, to be able to support
the family.  This was extremely difficult emotionally for Mr. Bui.
And he described his feeling an extra responsibility not to
disappoint his family as a result of his mother's exceptional
sacrifice.

         Mr. Bui is married to Thuy Pham.  His wife is a homemaker and
cares for their child.  She plans to return to Vietnam after
Mr. Bui is sentenced in this matter.  Mr. Bui's son is only seven
years old.

         Mr. Bui does not have any mental or emotional health
concerns, but he does consume illegal drugs or alcohol -- I'm
sorry.  And he does not consume illegal drugs or alcohol.

         He attended the University of Hanoi and the University of
Foreign Trade.  He received degrees in foreign languages and

1    economics.

2         With respect to the need for the sentence imposed to reflect

3    the seriousness of the offense, to promote respect for the law and

4    to provide just punishment for the offense, this offense is

5    certainly serious.  Mr. Bui was involved in the procurement and

6    exportation of potentially dangerous military items.  The jet

7    engines that he purchased from Sandia are used by the United

8    States Navy in anti-ship cruise missiles, and Mr. Bui purchased

9    the engines with the intent to use them in missiles in Vietnam.

10        Additionally, Mr. Bui was aware of the United States'

11   regulations requiring an export permit for these items, and he

12   attempted to avoid the permitting requirement and conceal the

13   intended use of the engines.

14        With respect to deterrence, the term of incarceration

15   provided for in the plea agreement, along with the severe

16   immigration consequences, will adequately deter future criminal

17   conduct.  Mr. Bui has a wife and a young son who will have to

18   uproot their lives to move back to Vietnam.  Mr. Bui stated that

19   it would be difficult to explain to his son why they have to move

20   back to Vietnam.  His wife and young son will be returning to

21   Vietnam to await Mr. Bui when he finishes his sentence.  Given the

22   distance, a longer sentence will be especially hard on Mr. Bui's

23   family.

24        With respect to protecting the public, although the offense

25   is not a violent one, it has serious national security

1    implications.  Mr. Bui was convicted of smuggling jet engines to

2    be used in missiles.

3         With respect to the need to avoid unwarranted sentencing

4    disparities, although the plea agreement provides for a sentencing

5    lower than the applicable guideline range, Mr. Bui faces severe

6    immigration consequences that many other defendants do not face.

7         Having considered the factors set forth in 18 U.S.C. 3553(a),

8    the Court finds that a sentencing in accordance with the plea

9    agreement is appropriate in this case.

10        Despite the relatively low sentence agreed to in the plea

11   agreement, this Court has set out the reasons why this is a

12   serious offense.  Mr. Bui attempted to circumvent the regulations

13   to export military jet engines to Vietnam.

14        While the offense is serious, Mr. Bui is receiving a

15   substantial reduction from the guideline range.  He is also

16   subject to the very harsh immigration consequences of deportation.

17   He will lose his legal residence, and his wife and young son will

18   be returning to Vietnam to await Mr. Bui when he finishes his

19   sentence.  Given the distance, a longer sentence would be

20   especially hard on Mr. Bui's family.

21        As to Count II of Indictment 1:16-CR-04134-001, Mr. Bui will

22   be committed to the custody of the Bureau of Prisons for a term of

23   12 months and a day.

24        He will be placed on supervised release for a period of three

25   years and must comply with the mandatory and standard conditions

1    of supervision.  The term of supervised release will be

2    unsupervised as Mr. Bui will be deported.  If Mr. Bui should be

3    granted legal status once again in the United States, then the

4    term of supervised release shall be supervised.

5         He must not re-enter the United States without legal

6    authorization.  And his term of supervised release shall not be

7    subject to early termination.

8         During the term of supervised release, his papers, documents,

9    writings, computers, and all electronic devices capable of being

10   used in connection with the export of items from the United States

11   shall be subject to search by the United States Pretrial and

12   Probation Office without notice to Mr. Bui.  The United States

13   Pretrial Services and Probation Office is permitted to conduct

14   searches in coordination with and with the assistance of any

15   federal law enforcement agency.

16        The Court recommends that ICE begin removal proceedings

17   during the service of this sentence.

18        Based upon his lack of financial resources, the Court will

19   not impose a fine.

20        Consistent with the stipulation in the plea agreement,

21   Mr. Bui has forfeited his rights, title and interest in the

22   $20,000 used as a down payment for the J420 turbojet engine and

23   all other items seized by the United States agents in connection

24   with this case, including the engine.

25        He expressly consents to HSI or any other federal agency

1   destroying or retaining such items as HSI or any other federal

2   agency sees fit without notice to the Defendant.

3        He shall pay a special assessment of $100, which is due

4   immediately.

5        The Court will -- let's see.  What is the position with

6   regard to voluntary surrender?

7             MR. STANFORD:  We don't oppose, Your Honor.

8             THE COURT:  All right.  The Court will permit voluntary

9   surrender.

10       Under the terms of the plea agreement, Mr. Bui had waived his

11  right to appeal the final sentence of the Court pursuant to

12  Section 18 U.S.C. 3742(a).

13       So unless there are any questions, Mr. Anderson, that will

14  conclude the sentencing today.

15            MR. ANDERSON:  Your Honor, the only request I would

16  have, and I don't know if it would apply in light of the sentence

17  the Court imposed, but Mr. Bui otherwise would request that the

18  judgment reflect a recommendation to the Bureau of Prisons for a

19  designation either to Pensacola, Florida, or Seagoville, Texas.

20       Now, I don't know -- and maybe the probation officer can help

21  me.  I don't know if Mr. Bui, in light of the sentence imposed,

22  will be sent to a facility or if he will be held locally for that

23  time.  So it may be that the recommendation is for naught.  But if

24  he is going to be designated somewhere, those are the facilities

25  that Mr. Bui would request a recommendation to.

```
 1              THE COURT:  I don't think he'll be held locally because
 2      it's a 12-month sentence, and he hasn't done any time.  Right?
 3              MR. ANDERSON:  He's done 14 days, Your Honor, and that
 4      was immediately after his arrest in San Francisco.
 5              THE COURT:  Is that your understanding as well?
 6              MS. MANZANARES:  Your Honor, he can -- he'll check in
 7      with the marshal service, and they'll be able to provide him
 8      further information.
 9              THE COURT:  And they'll be able to what?  Turn on your
10      microphone, please.
11              MS. MANZANARES:  He'll need to report to the marshal
12      service, and they'll provide him further information on his
13      surrender instructions.
14              THE COURT:  Okay.  The designation process takes a
15      couple of months, and I don't think he -- I'm happy to recommend
16      either of those facilities.  He can either report here to the
17      marshal's office and be transported by the marshal's office at
18      such time as the designation process is ready for him.  It will
19      not be today.  Or he can -- he can go directly to the facility.
20              MR. ANDERSON:  Your Honor, and that's been a -- I
21      appreciate that.  I think where Mr. Bui comes out is he would
22      prefer to report to the facility at the time he's so designated
23      rather than being transported there by the marshals.
24              THE COURT:  That will be in a couple of months then.  He
25      just needs to stay in touch with the marshal's office.
```

1          MR. ANDERSON:  Certainly, Your Honor.  Does he need to
2   go speak to the marshals today?

3          THE COURT:  Yes.

4          MR. ANDERSON:  Downstairs?

5          THE COURT:  I think I'm getting updated information.
6   You'll hear it from the chief here.

7          DEPUTY MARSHAL ORTIZ:  So the way it works, is he'll
8   have to come downstairs today and do his voluntary surrender
9   paperwork.  And he'll report to the office in Albuquerque.  And
10  then he'll be taken to a facility from there.

11     He can't report to a BOP facility without coming through our
12  office.

13         MR. ANDERSON:  Can he report to the marshal's -- he
14  resides in the Northern District of California.  Could he report
15  to the marshals in the Northern District of California for
16  transportation?

17         DEPUTY MARSHAL ORTIZ:  Yes.

18         MR. ANDERSON:  He can?  He can arrange that through your
19  office, even though it's a different district?

20         DEPUTY MARSHAL ORTIZ:  Yes.

21         MS. MANZANARES:  Your Honor, I do have one question.  Is
22  the Court going to grant the 60-day voluntary surrender?

23         THE COURT:  Well, it depends on when they're ready for
24  him.  Sometimes that's the average designation period that it
25  takes.  Sometimes it takes a little bit more.

1          MS. MANZANARES:  Okay.

2          THE COURT:  But, Mr. Anderson, let me suggest to you

3    that once you get the designation, they have allowed some of my

4    defendants to transport themselves to the facility, and I don't

5    know how that's happened, but they have.  Most of them -- most of

6    them are transported by the marshals.  But they have allowed some

7    of my defendants to drive themselves to the facility.  And I don't

8    know how that's happened.

9       So once you get the designation, you know, at that point, you

10   can check with the marshals in the Northern District of California

11   and see how they can arrange that.  But it has -- some of my

12   defendants have turned themselves in themselves.

13         MR. ANDERSON:  And that was my understanding as well,

14   Your Honor.  It may be a resources issue.

15      Fortunately, Mr. Bui can get himself to whatever facility he

16   might be designated to, if that's permissible for the marshals.

17   But I will certainly be in touch with --

18         THE COURT:  Most of my defendants go through the

19   marshals.  But there have been some that -- maybe it is the

20   resource issue -- basically get themselves to the facility.

21      So I will recommend both of the facilities that you've

22   indicated.

23         MR. ANDERSON:  Thank you.

24         THE COURT:  I presume the one in Florida is not under

25   water?

1          MR. ANDERSON:  That's a good question.

2          THE COURT:  All right.  Anything further, Mr. Stanford?

3          MR. STANFORD:  Just to confirm, his conditions will

4    remain the same during the pendency of his designation?

5          THE COURT:  Yes, of course.

6          MR. STANFORD:  Thank you.

7          THE COURT:  All right.  If there's nothing further,

8    then, we will be in recess in your case.

9       And good luck to you and your wife, Mr. Bui.

10          MR. ANDERSON:  Thank you, Your Honor.  May we be

11   excused?

12          THE COURT:  Yes.  Thank you.

13   **(Court in recess at 10:44 a.m.)**

14

15

16

17

18

19

20

21

22

23

24

25

1              IN THE UNITED STATES DISTRICT COURT

2                 FOR THE DISTRICT OF NEW MEXICO

3    _____
                                     )
4    UNITED STATES OF AMERICA,       )     No. 1:16-CR-04134-MV-1
              Plaintiff,             )
5                                    )
         vs.                         )
6                                    )
     QUANG HUY BUI,                  )
7              Defendant.            )
     _____)

8

9            CERTIFICATE OF OFFICIAL COURT REPORTER

10        I, Carmela V. McAlister, CRR, RPR, New Mexico CCR #306,

11   Federal Official Realtime Court Reporter, in and for the United

12   States District Court for the District of New Mexico, do hereby

13   certify that pursuant to Section 753, Title 28, United States

14   Code, that the foregoing is a true and correct transcript of the

15   stenographically reported proceedings held in the above-entitled

16   matter on September 19, 2017, and that the transcript page format

17   is in conformance with the regulations of the Judicial Conference

18   of the United States.

19   Dated this 10th day of October 2017.

20

21            /s/
     _____
22   CARMELA V. McALISTER, CRR, RPR, NM CCR #306
     United States Court Reporter
23   106 S. Federal Place
     Santa Fe, New Mexico  87501
24   Phone:  505-992-3829
     Email:  Carmela_McAlister@nmd.uscourts.gov
25